**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Lorenzo MARTINEZ,
Defendant–Appellant.**

**No. 88–1612.**

United States Court of Appeals,
Tenth Circuit.

Nov. 7, 1989.

fornia, sitting by designation.

Stephen C. Peters, Asst. U.S. Atty. (Michael J. Norton, Acting U.S. Atty., and Kathryn Meyer, Asst. U.S. Atty., with him on the brief), Denver, Colo., for plaintiff-appellee.

David A. Lane, Denver, Colo., for defendant-appellant.

Before SEYMOUR, HENLEY * and BALDOCK, Circuit Judges.

BALDOCK, Circuit Judge.

Defendant-appellant, Lorenzo Martinez, was charged in a one-count indictment with failure to appear in violation of 18 U.S.C. § 3146(a)(2). That statute reads in relevant part: "Whoever, having been released ... [on bail] knowingly ... fails to surrender for service of sentence pursuant to a court order shall be punished...." At trial, the parties agreed that the sole issue for the jury's consideration was whether Martinez possessed the required mental state to commit the crime. The jury answered yes and returned a verdict of guilty. On appeal, Martinez challenges his judgment of conviction, asserting the district court improperly (1) charged the jury that the prosecution "need not establish with certainty the exact date of the alleged offense," (2) allowed into evidence proof of his prior conviction and subsequent indictment for cocaine trafficking, and (3) failed to grant a mistrial based upon prosecutorial comments concerning his failure to testify at trial. Our jurisdiction arises under 28 U.S.C. § 1291. We affirm.

---

* Honorable J. Smith Henley, Senior United States Circuit Judge for the Eighth Circuit Court of Appeals sitting by designation.

*Facts*

On December 5, 1985, Martinez was convicted of conspiring to possess and distribute cocaine in violation of 21 U.S.C. §§ 841 & 846. Directly following the imposition of a four-year sentence on May 9, 1986, the district court granted Martinez an appeal bond on which his brother was the surety. At the bond hearing, the court required Martinez to read aloud that provision of his conditions of release which required him to keep the court and prosecution apprised of any address change: "The defendant shall advise the court and the U.S. attorney in writing prior to any change in address." Martinez agreed to obey all the conditions of his release, report to the probation office as directed, and surrender for service of sentence if his conviction was upheld. Martinez further acknowledged the possible penalties for his failure to comply. Next to his signature, Martinez identified his mailing address as that of his father— P.O. Box 301, San Luis, Colorado.

On August 6, 1987, this court affirmed Martinez' conspiracy conviction. *United States v. Martinez*, 825 F.2d 1451 (10th Cir.1987). The mandate issued on October 16, 1987. That same day, the clerk of the district court directed Martinez by separate letters addressed to him at P.O. Box 301, San Luis, Colorado, and to his attorney at 1343 Delaware, Denver, Colorado, to surrender to the marshal on or before November 16, 1987. When Martinez did not surrender, he was indicted for failure to appear under 18 U.S.C. § 3146(a)(2).[1] On December 17, 1987, authorities arrested Martinez at the Town and Country Motel in Denver where he had resided since November 23, in a room registered under the name of Steve Medina.

The circumstantial evidence at trial pertaining to Martinez' mental state was largely undisputed. On September 2, 1987, Martinez phoned his probation officer to check on the status of his appeal and a possible surrender date. The probation officer told Martinez to expect a surrender letter sometime in early October. After September 10, 1987, Martinez failed to report as required to his probation officer. On September 18, 1987, Martinez was indicted on new cocaine charges. Because of his earlier conviction, the new charges carried a potential sentence of between ten years and life imprisonment. 21 U.S.C. § 841(b)(1)(B). At that point, Martinez could no longer be contacted at his listed mailing address. Although Martinez' probation officer testified that Martinez was continually told to provide the probation office with any change of address, Martinez did not do so.

The day following the new indictment, September 19, 1987, Martinez registered at the Holiday Inn in Alamosa, Colorado, just forty-five miles from San Luis. His registration card at the motel listed his address as P.O. Box 352, San Luis, as opposed to Box 301. Martinez told the lounge manager that he was from Denver and was in town to see his family. Martinez checked out of the motel on September 22. While the lounge manager recalled that Martinez was again a guest at the inn the next month, his sister testified that Martinez stayed at home with his father, where she also resided, for the better part of September and October.

Martinez' attorney during this time was Karl Geil. According to Geil, Martinez notified him prior to October of a change of address which Geil wrote on a notepad but subsequently lost. Geil informed Martinez of both the adverse appellate judgment and new drug charges by a letter dated October 7, 1987, addressed to P.O. Box 301, San Luis. The letter concluded: "[The U.S. at-

---

1. The indictment against Martinez read as follows:

On or about November 16, 1987, Lorenzo B. Martinez, having theretofore been found guilty in the State and District of Colorado, of violating Title 21, United States Code, Section 846, and having been released on bond pursuant to the provisions of Title 18, United States Code, Section 3141, *et seq.*, upon a bail bond in the sum of $20,000.00; and having been ordered to surrender for service of sentence pursuant to a court order to the United States Marshal at the United States Courthouse, Denver, Colorado, on November 16, 1987, willfully and unlawfully failed to appear as required, all in violation of Title 18, United States Code, Section 3146.

Rec. vol. I at 1.

torney] suggests that you might wish to turn yourself in rather than having the federal government authorities searching the United States for you." Geil also sent to Martinez a copy of the October 16 letter from the district court clerk directing Martinez to surrender. Geil had no further contact with Martinez after this letter. Yet no correspondence addressed to Martinez at P.O. Box 301, San Luis, was ever returned undelivered.

About the time of his November 16 surrender date, Martinez arrived at the home of his cousin, Joe Manzanares, in Denver. Martinez told his cousin that he had to surrender and asked if he could stay with him at 4955 Lincoln for a couple of nights. Manzanares agreed. During his stay with Manzanares, Martinez received a phone call from his sister. She informed Martinez that if he did not surrender by December 18, his brother would forfeit the property posted as bond on Martinez' behalf. Martinez assured his sister he knew he had to surrender.

After leaving Manzanares' house, Martinez apparently checked into the Town and Country Motel. On December 1, 1987, Martinez phoned Manzanares and asked him to come to the motel. Manzanares picked up Martinez and the two men proceeded to have dinner with Martinez' daughter. Following dinner, the men returned Martinez' daughter to her mother's house. At Martinez' request, Manzanares then dropped Martinez off at the corner of Broadway and Colfax in Denver. Martinez did not tell Manzanares were he was going. Seventeen days later, Martinez was apprehended by federal authorities.

## I.

Martinez argued at trial that he did not "knowingly" fail to surrender on November 16, 1987, as required by 18 U.S.C. § 3146. According to Martinez, because the failure to appear as proscribed by § 3146 was not a continuing offense, evidence suggesting that he subsequently received notice that he was to have surrendered on that date was irrelevant. Consequently, Martinez objected to the district court's jury charge regarding the timing of the offense:

> You will note that the indictment charges that the alleged offenses were committed on or about a certain date. The proof need not establish with certainty the exact dates of the alleged offenses. It is sufficient if the evidence in the case establishes beyond a reasonable doubt that the offense was committed on a date reasonably near the date alleged.

Rec. vol. IV at 336.

## A.

■ The question of whether a federal offense is "continuing" in that the crime is not exhausted so long as the prescribed conduct continues or "complete" in that the crime ends when every element of the crime occurs, is a matter of statutory interpretation reviewable *de novo*. *Toussie v. United States*, 397 U.S. 112, 124–25, 90 S.Ct. 858, 865–66, 25 L.Ed.2d 156 (1970) (White, J., dissenting), *superseded by* 50 U.S.C.App. § 462(d). Despite Martinez' assertion that *Toussie* cautions against labeling an offense as continuing "unless the explicit language of the substantive criminal statute compels such a conclusion", *id.* at 115, 90 S.Ct. at 860, we have no doubt that the offense of failure to appear under 18 U.S.C. § 3146 is a continuing one. Both the nature of the failure to appear offense and the legislative history of § 3146 lead us to this conclusion.

*Toussie's* justification for its caution rested in the potential conflict between a continuing offense and the statute of limitations. That case involved a male citizen's failure to register for the draft in accordance with federal law. The applicable statute required males between the ages of eighteen and twenty-six to register as determined by presidential proclamation. That proclamation mandated registration within five days of a male's eighteenth birthday. Toussie therefore should have registered between June 23 and June 28, 1959. He failed to do so but was not indicted until 1967. The government argued that under the statute the offense continued until Toussie reached the age of

twenty-six, and thus the five-year statute of limitations for the offense did not bar his prosecution. The Supreme Court rejected the government's argument and held that Toussie's prosecution was barred because the offense of failing to register was complete five days after Toussie's eighteenth birthday in accordance with the proclamation. *Toussie*, 397 U.S. at 112–24, 90 S.Ct. at 859–65. Notably, Congress promptly overruled *Toussie* by enacting 50 U.S.C.App. § 462(d), which provides that an individual may be prosecuted for failure to register up to the age of thirty-one. *See United States v. Kerley*, 838 F.2d 932, 935 (7th Cir.1988) (§ 462(d) implies a continuing duty to register).

The conflict presented in *Toussie* simply is absent here for no statute of limitations extends to the offense of failure to appear. Under 18 U.S.C. § 3290: "No statute of limitations shall extend to any person fleeing from justice." *See United States v. Bailey*, 444 U.S. 394, 413–14, 100 S.Ct. 624, 636–37, 62 L.Ed.2d 575 (1980) (escape from federal custody is a continuing offense and thus an escapee may be held liable for failure to return to custody as well as for the escape itself). *See generally* Annotation, *Tolling Federal Criminal Statutes of Limitation by Reason of Flight From Justice Within Meaning of 18 U.S.C. § 3290*, 33 A.L.R.Fed. 716 at § 6 (1977) (phrase "fleeing from justice" does not require that alledged offender be found in a jurisdiction other than one in which crime was committed). The lack of a limitations period strongly hints of a continuing duty on behalf of Martinez to appear once he obtained or reasonably should have obtained knowledge of his surrender date. *See United States v. Causey*, 834 F.2d 1179, 1185 (5th Cir.1987) (en banc) (Higginbotham, J., concurring) (failure to appear offense by its nature is continuing). As the Supreme Court so aptly reasoned in *Bailey*, 444 U.S. at 394, 100 S.Ct. at 626: "Given the continuing threat to society posed by an escaped prisoner, 'the nature of the crime involved is such that Congress must assuredly have intended that it be treated as a continuing one.'" (quoting *Toussie*, 397 U.S. at 115, 90 S.Ct. at 860). Because the

threat presented by a sentenced felon's failure to appear is certainly no less, we must reach a like conclusion in this case.

Section 3146 was designed to prohibit bail jumpers from buying their freedom by forfeiting their bonds and remaining unapprehended while the government's case on the substantive crime weakened over time:

> In the absence of an indictable offense of bail jumping, defendants were able to buy their freedom by forfeiting their bonds and taking the risk that they could go unapprehended. Even if apprehended, many defendants could hide for periods long enough for the government's case, especially for major offenses, to grow weaker because of the unavailability of witnesses, memory lapses, and the like, and thereby defeat the government's prosecutive efforts.

H.Rep. No. 1030, 98th Cong., 2d Sess. 30, *reprinted in* 1984 U.S.Code Cong. & Admin.News 3182, 3213 (hereinafter H.Rep.). Applying this rationale to Martinez' theory of the case illustrates the absurdity of his position.

Let's assume for the moment that Martinez had no actual or constructive knowledge of his November 16 surrender date until November 17. Under Martinez' interpretation of § 3146, he could remain at large indefinitely while the pending cocaine trafficking charges against him became stale. Once Martinez was certain the government could no longer prove its case against him on the outstanding indictment, he could surrender without fear of prosecution on those charges. Similarly, under his interpretation of § 3146, Martinez could not be prosecuted on the failure to appear charges because of his lack of knowledge of the surrender date until after that date had passed. The only sentence Martinez would be required to fulfill would be his four-year term on the original cocaine trafficking conviction. Thus, by remaining a fugitive, Martinez substantially reduces his possible jail time if he cannot be convicted for the failure to appear offense. *Reductio ad absurdum!* To conclude that the offense of failure to appear must be complete, if ever, on the surrender date would

be to ignore both the nature of the crime and the congressional intent underlying § 3146. The district court properly instructed the jury that the prosecution need not prove an exact date for the charged offense.

### B.

The evidence was in any event sufficient for the jury to find beyond a reasonable doubt that Martinez "knowingly" failed to appear on November 16. We begin with the well settled presumption that notice mailed is notice received. *E.g., Hagner v. United States,* 285 U.S. 427, 430, 52 S.Ct. 417, 418, 76 L.Ed. 861 (1932); *United States v. Perry,* 474 F.2d 983, 985 (10th Cir.1973). That both the district court clerk and Martinez' attorney mailed Martinez notice of the November 16 surrender date at P.O. Box 301, San Luis is uncontroverted. The district court tendered to the jury an instruction containing the "entirely permissive inference or presumption which allows—but does not require—the trier of fact to infer the elemental fact from proof by the prosecutor of the basic one and which places no burden of any kind on the defendant." *Davis v. Maynard,* 869 F.2d 1401, 1405 (10th Cir.1989) (quoting *County Court v. Allen,* 442 U.S. 140, 157, 99 S.Ct. 2213, 2224, 60 L.Ed.2d 777 (1979)). The instruction read: "Under the law you are allowed to infer that a letter properly addressed, stamped and placed in the United States Mails was received at the address used, but you should not draw this inference if you are not convinced by the evidence." Rec. vol. IV at 338–39.

Martinez argues over the fact that Martinez' attorney lost his new address. While we ponder whether this new address was that of the Holiday Inn, Town and Country Motel or Manzanares' residence, where Martinez claims he was residing makes no difference. Martinez by signing his conditions of release agreed to keep the district court and U.S. attorney informed of any change in his address. When he spoke with his probation officer for the final time in early September, Martinez was told he would be receiving a surrender date short-

ly. Thereafter, Martinez was at best elusive. Martinez knew that a surrender date would be set, yet paid no heed:

Conduct involving a failure to keep in contact and in touch with the situation amounts to a conscious disregard that an appearance date will come and pass. A person released on bail can be charged with a gross deviation from the standard of conduct applicable to the ordinary person when he fails to keep in touch with the status of his case or places himself out of reach of the authorities and his attorney.

H.Rep. at 32. *Accord United States v. Bourassa,* 411 F.2d 69, 74 (10th Cir.1969) (jury instruction on wilfull failure to appear was sufficient without requiring proof of explicit notice of trial date); *United States v. Yates,* 698 F.2d 828, 831 (6th Cir.1983) (proof of actual knowlege of appearance date not required where defendant engaged in course of conduct designed to avoid receipt of notice); *United States v. Bright,* 541 F.2d 471, 476–77 (5th Cir.1976) (same); *United States v. DePugh,* 434 F.2d 548, 551 (8th Cir.1970) (same).

### II.

Martinez next contends that the district court improperly allowed the government to submit evidence of the nature of his prior conviction and pending indictment without balancing the evidence's probative value against its potential prejudice. Fed. R.Evid. 404(b) provides:

Evidence of other crimes, wrongs, or acts is not admissible to proved the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

The threshold inquiry the district court must make before admitting evidence under Rule 404(b) is whether such evidence is "probative of a material issue other than character." *Huddleston v. United States,* 485 U.S. 681, 108 S.Ct. 1496, 1499, 99 L.Ed.2d 771 (1988). In so doing, the court necessarily assesses whether the evidence is relevant as required by Fed.R.Evid. 402, and, if so, whether the probative value of

the evidence is "substantially outweighed" by its potential for unfair prejudice. Fed. R.Evid. 403. We review the district court's decision to admit evidence under Rule 404(b) for an abuse of discretion. *United States v. Record*, 873 F.2d 1363, 1373, 1375 (10th Cir.1989) (court has "broad discretion" to determine whether prejudice inherent in relevant evidence outweighs its probative value).

■ Applying these principles, we find no merit to Martinez' contention that the district court erred in admitting Rule 404(b) evidence. The trial court admonished the jury at the outset of the trial that the evidence of Martinez' drug trafficking conviction and indictment could be considered for purposes of motive only:

> [Y]ou can consider the existence of either of these two, either the prior conviction or the presently pending indictment, you can consider those against the defendant only to the extent they might provide some evidence of a motive to commit the offense of bail jumping. But you are instructed at the outset of trial that you are not to consider the simple existence of the cocaine conviction or the cocaine charges pending against the defendant as evidence that he's anymore likely to have committed the offense of bail jumping.

Rec. vol. III at 84. *See* Fed.R.Evid. 105 (upon request, court should instruct jury that 404(b) evidence is to be considered only for proper purpose). Given the highly probative nature of Martinez' prior drug-related conduct on the issue of his motive to avoid arrest and the district court's limiting instruction, we are satisfied that the court acted well within its discretion in admitting such evidence. The potential prejudice of the evidence did not "substantially outweigh" its probative value. *See Huddleston*, 108 S.Ct. at 1501 ("Congress was not nearly so concerned with the potential prejudicial effect of Rule 404(b) evidence as it was with ensuring that restrictions would not be placed on the admission of such evidence.").

### III.

■ Lastly, Martinez argues he was unfairly prejudiced by the prosecutor's com-ments in closing argument pertaining to Martinez' failure to testify at trial. The prosecutor remarked: "Oh, sure, we don't have any admissions by the defendant or anybody else," and "this defendant is sitting there hiding behind his lawyer." Martinez' counsel objected to both remarks and in both instances the district court instructed the jury to disregard the prosecutor's statement. In reviewing a claim of prosecutorial misconduct, we first determine whether the alleged misconduct was indeed error. If error exists, we then consider the record as a whole and ask whether such error requires reversal or was instead harmless beyond a reasonable doubt. *Record*, 873 F.2d at 1376.

Placed in the proper context, we are not convinced that the prosecutor's statements violated Martinez' fifth amendment right to be free from self-incrimination. *See, e.g., Griffin v. California*, 380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed.2d 106 (1965) (improper for prosecutor to comment on defendant's invocation of privilege to remain silent). The remark regarding the lack of an admission by Martinez was made during the prosecutor's discussion of the circumstantial evidence and the role it should play in the jury's deliberations. The accusation that Martinez was "hiding behind his lawyer" was in response to Martinez' claim that his former attorney had acted negligently in losing Martinez' new address. Taken out of context, the propriety of both remarks is subject to question. But reviewing the record in its entirety, we conclude neither remark was intended to bear upon Martinez' failure to testify or any improper presumption of guilt arising therefrom. "[T]he protective shield of the Fifth Amendment should [not] be converted into a sword that cuts back on the area of legitimate comment by the prosecutor on the weaknesses in the defense case." *United States v. Hasting*, 461 U.S. 499, 515, 103 S.Ct. 1974, 1984, 76 L.Ed.2d 96 (1983) (Stevens, J., concurring).

AFFIRMED.