In the

# United States Court of Appeals
### For the Seventh Circuit

---

No. 05-4623

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

ALFRED ELLIOTT,

*Defendant-Appellant.*

---

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 04 CR 1097—**Harry D. Leinenweber**, *Judge.*

---

SUBMITTED OCTOBER 11, 2006—DECIDED NOVEMBER 2, 2006

---

Before COFFEY, EASTERBROOK, and MANION, *Circuit Judges.*

EASTERBROOK, *Circuit Judge.* While he was a partner at Schiff, Hardin & Waite in Chicago, Alfred Elliott used clients' confidential information for his own benefit in securities transactions. Eventually he was convicted on 70 counts of securities fraud, mail fraud, tax evasion, and operating a racketeering enterprise. His sentence was five years' imprisonment plus fines and forfeitures of about $700,000. On October 11, 1989, when he was scheduled to report to prison (a minimum-security camp in Oxford, Wisconsin), he phoned his lawyer to say that he was on his way from Chicago. He was on his way,

all right—but he was in Las Vegas en route to San Diego, not Oxford. He did not appear at the prison, and his lawyer lost contact with him. His appeal was dismissed under the fugitive disentitlement doctrine.

Fifteen years later, the FBI tracked him to Arizona, where he was living under the name L. David Cohn, which he had appropriated from a cousin and used to obtain a driver's license and other credentials. When the agents came to arrest him, he calmly claimed to be David Cohn, denied knowing any Alfred Elliott, and denied recognizing his own photograph. The agents were not fooled by that ploy or another: Elliott's claim that he was on his way to an urgent medical appointment for a life-threatening condition. A phone call revealed that the appointment was for a routine checkup.

In custody at last on his 1989 conviction, Elliott was indicted on the new charge of failing to report as directed to serve that sentence. 18 U.S.C. §3146(a)(2). His principal defense was that the indictment returned in 2004 came ten years too late, for the statute of limitations is five years from the crime's commission. 18 U.S.C. §3282. The district judge rejected that defense, a jury found Elliott guilty, and the court sentenced him to 21 months' imprisonment, which will begin in 2009 after his 60-month sentence ends. (Meanwhile the process of collecting the fines and forfeitures from assets that Elliott has hidden is under way. See *United States v. Elliott*, 2005 U.S. App. LEXIS 19095 (7th Cir. Sept. 1, 2005) (unpublished order).) His appeal presents three issues worth discussion; others have been considered but are insubstantial.

**1.** The district court concluded that failure to report for imprisonment is a continuing offense, so that the statute of limitations did not commence until Elliott's capture. He was indicted nine months later, well within the period of limitations. Many courts of appeals treat the §3146(a) crime

as a continuing offense that lasts until the convict finally reports to prison or is captured. See, e.g., *United States v. Lopez*, 961 F.2d 1058, 1059-60 (2d Cir. 1992); *United States v. Green*, 305 F.3d 422, 432-33 (6th Cir. 2002); *United States v. Camacho*, 340 F.3d 794, 796-97 (9th Cir. 2003); *United States v. Martinez*, 890 F.2d 1088, 1091 (10th Cir. 1989). Elliott insists that our decision in *United States v. Knorr*, 942 F.2d 1217, 1223 (7th Cir. 1991), is to the contrary because it remarks that the §3146(a) offense is "complete" as soon as the appointment for surrender is missed. He misunderstands what that expression means. The point of *Knorr* was that someone who fails to report on time has committed all of the elements that very hour; the length of delay is not an element of the crime. All continuing offenses work the same way. Someone commits the crime of conspiracy by agreeing to commit a future crime (and, for some conspiracy statutes, by committing an overt act); he may be prosecuted even if he repents ere the clock strikes midnight. The offense nonetheless continues (for limitations purposes) until he withdraws or is captured. Likewise the crime of escape, complete when the prisoner leaves custody, continues until he turns himself in or is nabbed. See *United States v. Bailey*, 444 U.S. 394, 413 (1980).

Unfortunately, *Knorr* also stated that failure to appear "is not a continuing offense." 942 F.2d at 1223. The language is dictum, for it did not play any role in the disposition. The opinion did not cite any authority, did not recognize that other circuits have held that this offense is "continuing," did not address the bearing of decisions such as *Bailey*, and did not explain why failure to appear should be treated differently for this purpose from the crime of escape. As far as we can tell, none of these issues had been briefed by the parties in *Knorr*. That judicial comments lacking the benefit of an adversarial presentation are more likely to be uninformed is a principal reason why dicta are not binding, and we now disavow this portion of *Knorr*.

Not that it matters whether §3146(a)(2) is a continuing offense. Another statute, 18 U.S.C. §3290, provides that "[n]o statute of limitations shall extend to any person fleeing from justice." Elliott became a fugitive, and thus was covered by this rule, as soon as he failed to report for custody. See *Sapoundjiev v. Ashcroft*, 376 F.3d 727, 729 (7th Cir.), rehearing denied, 384 F.3d 916 (2004). Section 3290 has exactly the same effect as calling §3146(a) a continuing offense: the period of limitations does not begin to run until the fugitive has been apprehended. So Elliott's indictment was timely.

**2.** Before trial, the prosecutor filed a motion asking the district judge to exclude evidence about the state of Elliott's health in 1989. The United States anticipated, from arguments that Elliott had made since his apprehension in 2004, that he would argue that he had been too confused by complications of diabetes and other ailments to report for prison in 1989. The judge granted this motion, and properly so. If Elliott had wanted to argue that illness made it impossible for him to report on October 11, 1989, or that he was temporarily befuddled as a result of his diabetes and therefore did not appreciate the need to report, then the evidence would have been relevant. Impossibility and failure to appreciate the obligation to report are legitimate defenses. But such defenses last no longer than the condition that makes reporting impracticable: "It is an affirmative defense to a prosecution under this section that uncontrollable circumstances prevented the person from appearing or surrendering, and that the person did not contribute to the creation of such circumstances in reckless disregard of the requirement to appear or surrender, and that the person appeared or surrendered as soon as such circumstances ceased to exist." 18 U.S.C. §3146(c). Elliott has never argued that he surrendered "as soon as such circumstances ceased to exist." He moved to Arizona, used his wits to obtain bogus identification papers and con-

ceal his real identity, ran a successful real-estate business, and never surrendered. He was neither unable to travel (how did he get to Arizona?) nor mentally incompetent for more than 5,000 days running. His mental and physical condition on October 11, 1989, therefore were not relevant to the charge.

**3.** When considering what sentence to impose, the district court started with the range under the Sentencing Guidelines. In calculating Elliott's offense level, the judge added two levels for obstruction of justice. See U.S.S.G. §3C1.1. The obstruction was Elliott's effort to persuade the FBI either that he was "Cohn" or that he must be allowed to visit his doctor (and thus have another chance to flee). In escape cases, deceit is a standard part of the criminal conduct, so an obstruction enhancement is unnecessary: the Guidelines include this conduct as part of the normal range, and an enhancement would be double counting. That's why Application Note 7 provides that using an alias does not justify an enhancement for the offense of failure to appear (along with other, similar crimes). Application Note 2 to U.S.S.G. §2J1.6, the guideline covering Elliott's crime, is to the same effect.

Application Note 7 has its own proviso: an enhancement remains appropriate "if significant further obstruction occurred during the investigation, prosecution, or sentencing of the obstruction offense itself (e.g., if the defendant threatened a witness during the course of the prosecution for the obstruction offense)." There is a similar proviso in Application Note 2 to §2J1.6. The prosecutor contends that Elliott's effort to throw the FBI off the scent is a "significant further obstruction," but it is hard to call Elliott's feeble efforts "significant." He stuck with the alias he had been using for more than a decade. The agents knew perfectly well that "L. David Cohn" was Elliott. His lies had no more effect than if he had started yodeling,

hoping that the agents would leave to avoid the assault on their aesthetic sensibilities.

Quite apart from Application Notes 2 and 7, giving a false name to an arresting officer is not obstruction of justice unless the lie "actually resulted in a significant hindrance to the investigation." U.S.S.G. §3C1.1 Application Note 5(a); see *United States v. Garcia*, 69 F.3d 810, 815 n.6 (7th Cir. 1995). Elliott told other lies; for example, he committed perjury during a deposition taken in some civil litigation to which he was a party in Arizona. But these had nothing to do with the federal offense.

Because the district judge miscalculated the Guideline range, which he used as a starting point, the error may have affected Elliott's sentence, and we must remand. This does not imply, however, that a sentence of 21 months is unreasonably high; to the contrary, it strikes us as unreasonably low, and *United States v. Booker*, 543 U.S. 220 (2005), gives the district court ample authority to impose an appropriate sentence on remand. See also, e.g., *United States v. Bullion*, No. 06-1523 (7th Cir. Oct. 19, 2006).

Guideline 2J1.6 does not take into account the duration of the flight from justice. How long the fugitive remains on the lam is vital to assessing the deterrent effect of a sentence, so 18 U.S.C. §3553(a)(2)(B), which comes to the fore after *Booker*, requires the district court to give this subject close attention. If Elliott had been caught by the end of October 1989, then tacking 21 months on to his 60-month sentence might well have provided appropriate deterrence and desert. But he remained at liberty for almost 15 years, which substantially eroded the deterrent force of his 60-month sentence. Instead of serving five years, with certainty, starting in 1989, Elliott converted his sentence to five years starting in 2004—with a substantial chance that it would never start at all. Time served in future years must be discounted to present value. As a deterrent, a 50%

chance of serving five years starting 15 years from now must have less than 25% the punch of five years, with certainty, starting right now. This represents only a modest discount (about 5% per annum); many people discount the future even more steeply.

Having evaded 75% of the deterrent value of his five-year sentence, what did Elliott receive in return? Why, an extra 21 months *starting in 20 years* (the 15 years of freedom during the escape, plus the 5 years of his principal sentence). And of course he would serve time for failing to report in 1989 only if caught later, and only if he survived long enough. Thus the expected value of the additional sentence—21 months starting in 20 years, but only if caught—must be discounted even more steeply than the 75% we calculated for the principal sentence. Make it an 80% discount: a 50% probability of serving an extra 21 months, starting 20 years from now, has the same disutility as a threat of 4 months with certainty starting now. The net effect is that, by taking flight, Elliott cut the cost of his 60-month sentence to the (1989) equivalent of 15 months, at the price of a (1989) equivalent of 4 extra months. Who wouldn't trade a 60-month sentence for a 19-month sentence (15 + 4 months in 1989-equivalent terms)? No wonder Elliott absconded.

Doubtless fugitive status carries a price of its own: uncertainty hangs over the fugitive's head, and activities that draw attention to oneself must be avoided. But Elliott would have been excluded from many activities (such as the practice of law) by his conviction, independent of his fugitive status. Time as a fugitive must be superior (in the felon's eyes) to serving the sentence, or the felon would turn himself in. So the gain from postponing (or avoiding) time in prison is not offset by the fact that the fugitive cannot lead a full life. Thus the law's deterrent and retributive effect can be maintained, in the event of prolonged fugitive status, only by substantial incremental penalties. Even

imposing the statutory maximum of 10 years for Elliott's failure-to-report offense would not bring the law's deterrent power in 2004 up to what it would have been had Elliott reported as required in 1989. (We deem the maximum to be 10 years under §3146(b)(1) (A)(i) rather than 5 years under §3146(b)(1)(A)(ii), because the cap depends on the statutory maximum for the underlying crime rather than the actual sentence imposed for that offense. Elliott's statutory maximum for his fraud, tax, and RICO convictions exceeded 300 years.)

Under *Booker* the district judge, not the appellate tribunal, is principally responsible for selecting a reasonable sentence. But defendants often suppose that *Booker* means "lower sentences" rather than "sentences selected with greater discretion from the statutory range." *Booker* does *not* require lower sentences; nor does a conclusion that the district court erred in calculating the Guideline range. More discretion can produce higher sentences as well as lower ones. Whether this is one of the cases in which the sentence should rise is for the district court in the first instance.

Elliott's conviction is affirmed. His sentence is vacated, and the case is remanded for further proceedings consistent with this opinion.

No. 05-4623 9

A true Copy:

Teste:

_____
*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*