**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Ronald J. COLT, Defendant–Appellant.**

No. 96–3577.

United States Court of Appeals, Seventh Circuit.

Argued April 10, 1997.

Decided Oct. 2, 1997.

Peggy A. Lautenschlager, John Vaudreuil (argued), Office of the United States Attorney, Madison, WI, for Plaintiff–Appellee.

Robert T. Ruth (argued), Madison, WI, for Defendant–Appellant.

Before RIPPLE, MANION, and KANNE, Circuit Judges.

KANNE, Circuit Judge.

After being charged by an information, Ronald Colt pleaded guilty to the misdemeanor offense of submitting false unemployment claims with the United States Railroad Retirement Board, in violation of 45 U.S.C. § 359(a). Colt was sentenced to seven months in prison and one year of supervised release. Colt served his time in prison, but he subsequently committed five violations of his supervised release conditions, including motor vehicle offenses and drug use. A magistrate judge therefore revoked the supervised release and sentenced Colt to another nine months in prison.

On appeal, Colt raises two arguments—one statutory and one constitutional. The statutory argument merits only brief consideration. Under 45 U.S.C. § 359(a), anyone convicted of making a false claim "shall be punished by a fine of not more than $10,000 or by imprisonment not exceeding one year, or both." Colt argues this statute allows no more than one year of incarceration for his offense. Colt, however, will have served a total of 16 months in prison after the nine-month sentence imposed for violating his supervised release. This additional sentence, Colt argues, violates the one-year limit expressed in § 359(a).

What Colt's argument ignores is that his supervised release was authorized by a sepa-

rate statute, 18 U.S.C. § 3583. Section 3583(a) provides in relevant part:

> The court, in imposing a sentence to a term of imprisonment for a felony or a misdemeanor, may include as a part of the sentence a requirement that the defendant be placed on a term of supervised release after imprisonment. . . .

> The term of supervised release that a court may impose depends on the underlying offense. Because the maximum term of imprisonment for Colt's offense was one year, it is classified as a Class A misdemeanor. *See* 18 U.S.C. § 3559(a). And under § 3583(b)(3), a court may order one year or less of supervised release for misdemeanors. If, however, a defendant violates a condition of supervised release, § 3583(e)(3) authorizes the court to revoke the release and order the defendant to serve in prison all or part of the term of supervised release authorized by statute "without credit for time previously served on postrelease supervision."

Colt's supervised release, therefore, was authorized by a statute separate from the substantive statute under which Colt was convicted. Colt would have us read the substantive statute as a ceiling on the combined punishment he may receive under all statutes, but we think it more natural to read § 3583 as authorizing punishment in addition to the punishment authorized under substantive statutes. It is quite reasonable that Congress would enact a general, all-purpose supervised release statute to supplement the specific punishments authorized by the numerous criminal statutes.

Colt, however, highlights the language of § 3583(a) stating that supervised release may be ordered "as part of the sentence." Colt argues that this language permits supervised release as a *component of* the sentence authorized by the underlying statute, so long as the defendant is incarcerated no longer than the underlying statute's maximum term. Based on the legislative history and purpose of § 3583, however, our sister circuits have persuasively rejected both this argument and the closely-related argument that supervised release alone (regardless of revocation and subsequent imprisonment) may not be imposed in addition to a maximum sentence. *See, e.g., United States v.*

*Robinson,* 62 F.3d 1282, 1284–86 (10th Cir. 1995); *United States v. Purvis,* 940 F.2d 1276, 1278–79 (9th Cir.1991); *United States v. Jamison,* 934 F.2d 371, 372–75 (D.C.Cir. 1991); *United States v. Montenegro–Rojo,* 908 F.2d 425, 431–34 (9th Cir.1990); *cf. United States v. Granderson,* 511 U.S. 39, 49, 114 S.Ct. 1259, 1266, 127 L.Ed.2d 611 (1994) ("Supervised release, in contrast to probation, is not a punishment in lieu of incarceration."). Colt's interpretation of the statute, for example, would create the odd result that criminals sentenced at or near the maximum sentences for their offenses would be ineligible for a term of supervised release, even though they are the people perhaps most in need of controlled reintroduction to society. *See Montenegro–Rojo,* 908 F.2d at 433. Colt's interpretation would also result in the anomaly that courts could never impose the one year of incarceration that § 3583 authorizes for misdemeanants whose supervised release is revoked. Section 3583(a) authorizes the year of supervised release "after imprisonment," and § 3583(e) allows "all or part" of that term to be served in prison upon revocation of the supervised release. But if Colt is correct that the underlying statute creates an absolute limit on the time of incarceration, no court could ever impose one year of incarceration after revocation because such a punishment would, when combined with the earlier imprisonment, always cause a total incarceration greater than the one year allowed for misdemeanors. Colt's interpretation of § 3583 would therefore imply that Congress authorized a punishment that could never be imposed. *See Jamison,* 934 F.2d at 374–75. This logical contradiction, combined with the convincing analyses of our sister circuits, leads us to reject Colt's statutory argument. *Cf. Czerkies v. U.S. Dep't of Labor,* 73 F.3d 1435, 1438 (7th Cir.1996) (en banc) ("We ought not go out of our way to create intercircuit conflicts.").

Our rejection of Colt's statutory argument, however, leads us right into his more novel constitutional argument. Colt argues that if § 3583 does allow him to be imprisoned for longer than one year, then he should have been indicted by a grand jury rather than charged by an information. Colt constructs a simple syllogism based on the

Grand Jury Clause of the Fifth Amendment. That clause, according to Colt, requires that offenses punishable by imprisonment for more than one year be prosecuted by indictment. Our interpretation of § 3583 makes Colt subject to imprisonment for more than one year. Thus, Colt concludes, his prosecution by information violated the Grand Jury Clause. Furthermore, says Colt, we cannot escape this syllogism by arguing that the imprisonment after revocation was a separate sentence (*i.e.,* based on additional wrongdoing and after a separate sentencing proceeding). Traditional constitutional protections ordinarily do not apply to revocations of supervised release, according to Colt, because a revocation is considered a modification of the original sentencing where the constitutional protections did apply. *See, e.g., United States v. Wyatt,* 102 F.3d 241, 245 (7th Cir.1996), *cert. denied,* —— U.S. ——, 117 S.Ct. 1325, 137 L.Ed.2d 486 (1997). If we now want to treat revocation as separate and distinct for purposes of the Grand Jury Clause, by logic we should also treat it as separate and distinct for purposes of the Petit Jury Clause of the Sixth Amendment (which requires a jury trial for offenses than can result in a prison term of greater than six months, *see Baldwin v. New York,* 399 U.S. 66, 90 S.Ct. 1886, 26 L.Ed.2d 437 (1970)). We are thus confronted with the choice, according to Colt, of holding either that an indictment was necessary for his original prosecution or that a jury trial was required for the revocation of his supervised release.

Our options are not so few, however, because of a basic flaw in the major premise of Colt's syllogism. Colt cites Federal Rule of Criminal Procedure 7(a) as the codification of the Grand Jury Clause's requirements. According to Rule 7(a), "An offense which may be punished by imprisonment for a term exceeding one year or at hard labor shall be prosecuted by indictment...." Although the Advisory Committee Note states that Rule 7(a) "gives effect to" the Grand Jury Clause, Colt presses the text of the rule too far and thus bases his argument on a skewed version of constitutional doctrine.

The starting point for our analysis is, of course, the text of the Constitution itself. *See Printz v. United States,* —— U.S. ——,

——, 117 S.Ct. 2365, 2370, 138 L.Ed.2d 914 (1997). The Grand Jury Clause provides, "No person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury, except in cases arising in the land or naval forces, or in the Militia, when in actual service in time of War or public danger...." U.S. Const. amend. V. The clause was added to the Constitution after at least three of the ratifying states requested such an amendment. *See generally Mark Kadish, Behind the Locked Door of an American Grand Jury: Its History, Its Secrecy, and Its Process,* 24 Fla. St. U.L.Rev. 1, 8–12 (1996). Although the grand jury was first instituted in England to aid the Crown in the prosecution of criminals, it had over time developed into a safeguard of individual rights. *See id.* at 5–8. Indeed, the Supreme Court has stated that the "whole theory of [the grand jury's] function is that it belongs to no branch of the institutional Government, serving as a kind of buffer or referee between the Government and the people." *United States v. Williams,* 504 U.S. 36, 47, 112 S.Ct. 1735, 1741, 118 L.Ed.2d 352 (1992). The New York ratifying convention, therefore, suggested that a presentment or indictment "ought to be observed as a necessary preliminary to the trial of all crimes cognizable by the judiciary of the United States." 1 *Debates in the Several State Conventions on the Adoption of the Federal Constitution* 328 (Jonathan Elliot ed., 2d ed. 1888) (hereinafter Elliot). John Hancock and the Massachusetts convention, meanwhile, stated that it would "remove the fears, and quiet the apprehensions, of many of the good people of this commonwealth" if the Constitution were amended so that, among other things, an indictment would be required for any crime "by which [a person] may incur an infamous punishment, or loss of life." 1 Elliot 322–23. The amendments that James Madison originally introduced in the House of Representatives would have required a grand jury "in all crimes punishable with loss of life or member," but the language ultimately passed by Congress broadened the grand jury guarantee to all capital and "otherwise infamous" offenses. See Bernard Schwartz, *The Great*

*Rights of Mankind: A History of the American Bill of Rights* 233 (1977).

Submitting false unemployment claims is certainly not a capital crime, so the question is whether Colt's offense is an "otherwise infamous" crime. The Supreme Court began to elaborate upon the meaning of this phrase in a series of cases during the late nineteenth century. In *Ex parte Wilson*, 114 U.S. 417, 5 S.Ct. 935, 29 L.Ed. 89 (1885), the Court stated that the category of infamous crimes "must ... include crimes subject to any infamous punishment" regardless of whether it also includes "crimes infamous in their nature, independently of the punishment affixed to them." *Id.* at 423–24, 5 S.Ct. at 938–39. When defining infamous punishments, moreover, the question is not whether a defendant in fact receives an infamous punishment but rather "whether the crime is one for which the statutes *authorize* the court to award an infamous punishment." *Id.* at 426, 5 S.Ct. at 939 (emphasis added). In *Wilson*, the Court concluded that possession of a counterfeit bond with intent to sell was an infamous crime because the punishment authorized for that offense—15 years at hard labor—was an infamous punishment. "[A] crime punishable by imprisonment for a term of years at hard labor is an infamous crime." *Id.* at 429, 5 S.Ct. at 940.

The extent of *Wilson*'s holding, however, soon came into dispute. The Court's opinion, for example, had emphasized that imprisonment in a state prison or penitentiary is more onerous than imprisonment in a house of correction. The Court quoted at length from Massachusetts Chief Justice Lemuel Shaw's description of state prisons:

> The convict is placed in a public place of punishment, common to the whole state, subject to solitary imprisonment, to have his hair cropped, to be clothed in conspicuous prison dress, subjected to hard labor without pay, to hard fare, coarse and meager food, and to severe discipline. Some of these a convict in the house of correction is subject to; but the house of correction,

under that and the various names of workhouse and bridewell, has not the same character of infamy attached to it.

*Id.* at 428, 5 S.Ct. at 940 (quoting *Jones v. Robbins*, 74 Mass. (8 Gray) 329, 349 (1857)). Was it therefore the hard labor that made the punishment infamous, or was it the imprisonment at a state prison or penitentiary? The Court resolved that question in two subsequent cases. First, in *Mackin v. United States*, 117 U.S. 348, 6 S.Ct. 777, 29 L.Ed. 909 (1886), the Court held that "imprisonment in a state prison or penitentiary, *with or without hard labor*, is an infamous punishment." *Id.* at 352, 6 S.Ct. at 778 (emphasis added). The Court noted that its decision was in accord with both "the general opinion of the people" and the prevailing legislative classification of crimes. *Id.* at 352–53, 6 S.Ct. at 779–80. The actions of the state and federal legislatures supported the penitentiary distinction, according to the Court, because those legislative bodies reserved penitentiary punishment for only those offenses serious enough to be classified as felonies. *Id.*; *see also* 3 Joseph Story, *Commentaries on the Constitution of the United States* § 928 (1833) (stating that a grand jury was generally required at common law for "all offences, above the grade of common misdemeanors"). Second, in *United States v. Moreland*, 258 U.S. 433, 42 S.Ct. 368, 66 L.Ed. 700 (1922), the Court held that any imprisonment at hard labor, regardless of the place of imprisonment, was infamous punishment. *Id.* at 437, 42 S.Ct. at 370. The upshot of these cases, therefore, is that *either* imprisonment at a penitentiary or hard labor is sufficient to trigger the Grand Jury Clause's protections.[1]

The distinction between penitentiaries and other places of imprisonment survives in today's federal prison system. Under 18 U.S.C. § 4083, "[a] sentence for an offense punishable for one year or less shall not be served in a penitentiary without the consent of the defendant." *See also United States v.*

---

**1.** The Supreme Court has stated that "[w]hat punishments shall be considered as infamous may be affected by the changes of public opinion from one age to another." *Ex parte Wilson*, 114 U.S. at 427, 5 S.Ct. at 939; *accord Moreland*, 258 U.S. at 451, 42 S.Ct. at 374 (Brandeis, J., dissent-

ing); *Mackin*, 117 U.S. at 351, 6 S.Ct. at 778. Colt has not argued that public opinion now makes the penitentiary distinction invalid for defining infamous punishments, and we know of no reason why the distinction should be abandoned.

*Hanyard,* 762 F.2d 1226, 1229 (5th Cir.1985) ("[T]he purpose of section 4083, to prohibit confinement of misdemeanants to a penitentiary, is not violated by confining appellant to a federal prison camp."). Only eight of the Bureau of Prisons' institutions are designated as U.S. Penitentiaries, which feature the highest security and the closest control of prisoner actions. See 28 C.F.R. pt. 503 (1996); Federal Bureau of Prisons, U.S. Dep't of Justice, *State of the Bureau* 45 (1994). Thus, when Federal Rule of Criminal Procedure 7(a) mandates indictments for crimes punishable by "a term exceeding one year," the rule is based on Congress' decision regarding which criminal should be subject to imprisonment in a penitentiary. *See* Fed. R.Crim.P. 7 advisory committee's note. Rule 7(a)'s one-year dividing line, in other words, is not the constitutional rule itself but rather is derivative of the constitutional line separating infamous from other crimes.

To be entitled to a grand jury, therefore, Colt needed to be subject to imprisonment in a penitentiary. Colt, however, was never at risk of going to the penitentiary. As noted above, 18 U.S.C. § 4083 authorizes penitentiary imprisonment only for offenses punishable by imprisonment exceeding one year. Although Colt was ultimately sentenced to a total of 16 months of imprisonment, that punishment comprised two discrete terms of imprisonment of less than one year. We interpret § 4083 to apply to each term of the sentence separately. When Colt was sentenced to his initial seven months of imprisonment, § 4083 did not allow the Government to put Colt in a penitentiary simply on the mere chance that a later revocation of supervised release would raise his total incarceration to greater than one year. Similarly, when Colt was sentenced to nine months of imprisonment upon revocation, § 4083 did not authorize sending Colt to Leavenworth based on the total time in prison. Section 4083 was in place long before Congress enacted the supervised release provisions, and that statute allowed penitentiary imprisonment based on the imprisonment authorized by substantive criminal statutes. After the creation of supervised release, § 4083 should continue to be interpreted as dividing offenses based on definite terms of imprisonment (such as those authorized by substantive statutes), not on conditional possibilities of imprisonment (such as those based on supervised release revocation). Indeed, any other reading would render half of § 4083 virtually nugatory because under 18 U.S.C. § 3583, even misdemeanants face a possible one year of imprisonment after revocation of supervised release. We doubt that Congress, when enacting the supervised release provisions, also intended to make every criminal defendant subject to penitentiary confinement. Because Colt was therefore never exposed to imprisonment in a penitentiary, the Grand Jury Clause did not require that he be indicted. We further note that the other circuits that have considered this question have rejected Colt's argument as well. *See United States v. Smith,* 982 F.2d 757, 760–62 (2d Cir.1992); *Purvis,* 940 F.2d at 1279–80; *United States v. Celestine,* 905 F.2d 59, 60–61 (5th Cir.1990).

■ Finally, the fact that Colt received two terms of imprisonment does not mean that his Petit Jury Clause claim is meritorious. Colt, remember, tried to argue that if the Grand Jury Clause did not protect him when he received his initial term of imprisonment, then the revocation of his supervised release was a separate punishment that invoked constitutional protections such as the Petit Jury Clause. Colt, however, was sentenced only once, and the revocation of his supervised release was but a modification of that sentence. The Grand Jury Clause applied at the sentencing; the clause simply did not help Colt because, under § 4083, he never faced the possibility of penitentiary imprisonment and thus no indictment was necessary.

The judgment of the District Court is AFFIRMED.