

2007 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

8-6-2007

# USA v. Wilks

Precedential or Non-Precedential: Non-Precedential

Docket No. 05-5124

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2007

## Recommended Citation

"USA v. Wilks" (2007). 2007 Decisions. Paper 619.
http://digitalcommons.law.villanova.edu/thirdcircuit_2007/619

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2007 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 05-5124
_____

UNITED STATES OF AMERICA

v.

ALTIMONT WILKS,

Appellant

_____

On Appeal from the United States District Court
for the Middle District of Pennsylvania
(D.C. Criminal No. 04-cr-00287)
District Judge: Honorable Christopher C. Conner
_____

Submitted Under Third Circuit LAR 34.1(a)
on July 9, 2007

Before:  RENDELL and AMBRO, Circuit Judges,
and SHAPIRO,*  District Judge.

(Filed: August 6, 2007)
_____

OPINION OF THE COURT
_____

_____

*  Honorable Norma L. Shapiro, Senior Judge of the United States District Court for
the Eastern District of Pennsylvania, sitting by designation.

RENDELL, Circuit Judge.

Altimont Wilks, *pro se,* appeals from a sentence entered against him by the United States District Court for the Middle District of Pennsylvania following a guilty plea to two counts of interstate travel in aid of racketeering.[1] On appeal, Wilks claims that the District Court erred by declining to grant a downward departure at sentencing, erroneously accepting the Presentence Report's drug quantity determination and recommended sentencing enhancement for possession of a firearm, as well as by handing down a sentence that exceeded the statutory maximum of 120 months.[2] We have jurisdiction to review these claims under 28 U.S.C § 1291, and 18 U.S.C § 3742(a).

**I.**

In Spring 2004, the Drug Enforcement Administration, Pennsylvania State Police, the Bureau of Alcohol, Tobacco and Firearms, and other law enforcement agencies in York County, Pennsylvania, and the State of Maryland, began investigating the drug trafficking activities of a number of individuals, including Wilks. Agents believed that

---

[1]On September 23, 2005, the District Court granted Wilks's motion to proceed *pro se*. On August 29, 2006, we granted Wilks's motion to proceed *pro se* on appeal in light of his waiver of counsel.

[2]Wilks also asserts that government agents improperly lured him across state lines in order to supply the "interstate" element of the offense to which he pled guilty. However, pursuant to his conditional guilty plea, Wilks *only* preserved the right to appeal the District Court's denial of his pre-trial motion to dismiss for violation of the Speedy Trial Act. Therefore, Wilks waived his right to appeal any other non-sentencing aspects of the proceedings below. *See* Fed. R. Crim. P. 11.

Wilks, who lived in Maryland, was distributing powder and crack cocaine in Maryland and south-central Pennsylvania.

On June 2, 2004, through the assistance of a confidential informant, an undercover agent spoke with Wilks by telephone and arranged to purchase crack and powder cocaine. On June 3, 2004, the agent and Wilks met in Gettysburg, Pennsylvania, where the agent purchased 14 grams of powder cocaine and 13 grams of crack cocaine. After the drug transaction, Wilks returned to Maryland.

Approximately two weeks later, on June 16, 2004, and June 17, 2004, the undercover agent arranged and completed a second transaction with Wilks. On this occasion, the agent was able to purchase 12.6 grams and 40.9 grams, respectively, of crack and powder cocaine.

While federal agents were investigating Wilks, members of the Frederick, Maryland Police Drug Enforcement Unit were also conducting an undercover narcotics investigation – an investigation in which Wilks was, once again, a suspect. On July 23, 2004, Maryland police arrested Wilks during a controlled drug transaction at a Frederick motel. After Wilks's girlfriend, who was present at the scene of arrest, informed the police of the location of Wilks's residence, police executed a search of the premises and discovered a bag belonging to Wilks that contained a loaded 9 millimeter Ruger P85 pistol, 37.94 grams of marijuana, 44.87 grams of crack cocaine, two digital scales, numerous empty Ziploc bags, 20 Ecstasy pills, and $2,180 in cash. Wilks was

subsequently charged in Maryland state court with fifteen drug and firearm offenses, and released on bail.[3]

While Wilks remained free, federal authorities indicted Wilks on August 25, 2004 for his participation in the June 2004 drug transactions. The indictment charged Wilks with the use of a communication device to facilitate the distribution of crack cocaine on, or about, June 2, 2004 (Count I), June 3, 2004 (Count II), June 16, 2004 (Count III), and June 17, 2004 (Count IV), all in violation of 21 U.S.C. § 843(b). The indictment also charged Wilks with possession with intent to distribute five grams or more of crack cocaine, and cocaine hydrochloride, on June 3, 2004 (Count V), and possession with intent to distribute five grams or more of crack cocaine, and cocaine hydrochloride, on June 17, 2004 (Count VI), both in violation of 21 U.S.C. § 841(a)(1).

On August 26, 2004, the day after the indictment was filed, officers apprehended Wilks while he driving his vehicle in Maryland. A search of Wilks's vehicle yielded approximately 22.6 grams of crack cocaine, a loaded .357 handgun with an obliterated serial number, and 19 additional .357 magnum rounds, all of which were in the vehicle's center console. Officers found a bullet proof vest in the trunk of the car, and a search of Wilks's person produced additional quantities of crack cocaine and marijuana, as well as $929 in cash.

---

[3]Wilks has submitted a letter, dated October 11, 2006, indicating that his case had been scheduled to proceed in the Circuit Court for Frederick County, Maryland, on February 13, 2007.

4

The June 3, 2004 and June 17, 2004 undercover drug transactions, combined with the July 23, 2004, and August 26, 2004 post-arrest seizures, connected Wilks to a total of 135.15 grams of crack cocaine, 26.6 grams of powder cocaine, and 37.94 grams of marijuana.

On June 1, 2005, Wilks entered into a conditional guilty plea to a superseding information for two counts of interstate travel in aid of racketeering, in violation of 18 U.S.C. § 1952(a)(3), which exposed Wilks to a maximum statutory prison sentence of 60 months per count. The District Court subsequently sentenced Wilks to a term of 120 months' imprisonment, consisting of consecutive maximum 60-month sentences for Counts One and Two, as well as a two-year term of supervised release.

Wilks now challenges aspects of his sentence.

## II.

We review the District Court's findings of fact for clear error. *United States v. Grier*, 475 F.3d 556, 570 (3rd Cir. 2006). We review *de novo* the District Court's legal conclusions, including interpretation of the sentencing guidelines. *Id*. We review the overall sentence for reasonableness. *Id*. at 568 (citing *United States v. Booker*, 543 U.S. 220, 260-263 (2005)).

Wilks first asserts that the District Court erred when it denied his motion to depart downward. Specifically, Wilks argues that the District Court erroneously believed that it lacked authority to depart downward from the PSR's recommended sentence based on Wilks's theories of "sentencing entrapment" and "sentence factor manipulation," which,

5

Wilks contends, resulted from government agents improperly luring him across state lines. Second, Wilks argues that the District Court erred in accepting the PSR's drug quantity determination and its sentencing enhancement for firearm possession because each was based, in part, on drugs and firearms seized in the July 23, 2004 and August 26, 2004 incidents, which occurred in Maryland, and, therefore, in Wilks's view, could not have qualified as "relevant conduct" for purposes of the federal charges against him. Finally, Wilks argues that by combining a term of 120 months' incarceration with two additional years of supervised release, the District Court crafted a sentence that exceeded the 120-month maximum provided by 18 U.S.C. § 1952(a)(3). We find these arguments unpersuasive.

With respect to Wilks's first argument, the District Court clearly understood its authority to depart downward. For instance, the Court said that although "it is in the court's *discretion to depart* [downward], the court *declines to do so* in this case as requested by the defendant." Sent. Hr'g Tr. 9, Nov. 16, 2005 (emphasis added). Rather than misunderstanding its ability to depart, the District Court simply declined to exercise its discretion. To the extent Wilks argues that the District Court erred by declining to depart, we have clearly said that we will not review such discretionary decisions. *See United States v. Cooper*, 437 F.3d 324, 333 (3rd Cir. 2006) ("We follow the Courts of Appeals for the First, Sixth, Eighth, Tenth, and Eleventh Circuits in declining to review, after *Booker*, a district court's decision to deny departure."). Here, the District Court articulated its authority to depart downward and "decline[d] to exercise its discretion to

6

depart under . . . the [sentencing] guidelines or under the doctrines of sentencing entrapment and sentencing factor manipulation." Sent. Hr'g Tr. 10, Nov. 16, 2005. Therefore, Wilks's argument must fail.

With respect to Wilks's second argument, it is clear that, even if the District Court had sustained his objections to the PSR and calculated Wilks's sentence solely by reference to the June 3, 2004, and June 17, 2004 drug quantities, Wilks would have received the same sentence. The District Court, in adopting the PSR's drug quantity recommendation, calculated Wilks's sentencing range to be 188–235 months. Had the Court used the lesser drug quantity requested by Wilks, it would have calculated the range to be 151–188 months. The District Court specifically acknowledged this difference, reasoning that, "ruling [on Wilks's PSR objections] would not affect the sentence . . .[,] which is capped by the statutory maximum of 60 months for each of the two drug counts, or 120 months total." *Id.* at 17-18. Therefore, the District Court made clear that it intended to impose the statutory maximum sentence and that any changes to the drug quantity would have had no impact.

Wilks's final argument is meritless. As every other Court of Appeals that has addressed the issue has said, a term of supervised release does not count towards a statute's maximum sentence because supervised release and incarceration are "two statutorily distinct modes of punishment . . .. The supervised release period is an independent element of the sentence. It is not carved out of the maximum permissible time allotted for incarceration under some other criminal statute." *United States v. Work*,

7

409 F.3d 484, 489 (1st Cir. 2005) (citing *United States v. West*, 898 F.2d 1493, 1504 (11th Cir. 1990)).  *See also United States v. Cenna*, 448 F.3d 1279, 1281 (11th Cir. 2006) (concluding that it is a "well-settled rule that a term of supervised release may be imposed in addition to the statutory maximum term of imprisonment") (citing *Work*, 409 F.3d at 489-91) (citations omitted); *United States v. Hinson*, 429 F.3d 114, 115-16 (5th Cir. 2005)*; United States v. Pettus*, 303 F.3d 480, 487 (2nd Cir. 2002) (declaring that "punishment for a violation of supervised release, when combined with punishment for the original offense, may exceed the statutory maximum for the underlying substantive offense") (quoting *United States v. Wirth*, 250 F.3d 165, 170 n.3 (2nd Cir. 2001)); *United States v. Colt*, 126 F.3d 981, 982-83 (7th Cir. 1997); *United States v. Wright*, 2 F.3d 175, 179-80 (6th Cir. 1993); *United States v. Purvis,* 940 F.2d 1276, 1278 (9th Cir. 1991) ("We have expressly and repeatedly held that a sentencing court may *impose* a term of supervised release which, when combined with the term of imprisonment, results in a total sentence beyond the statutory maximum for the substantive offense.") (citations omitted).  Therefore, it is clear that the sentence imposed did not exceed the statutory maximum term of 120 months' imprisonment.

## III.

For these reasons, we will AFFIRM the sentence imposed in the Judgment and Commitment Order of the District Court

_____