In the

# United States Court of Appeals

## For the Seventh Circuit

No. 10-1936

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

CARLTON MCINTOSH,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 03 CR 991—**Rebecca R. Pallmeyer**, *Judge.*

ARGUED OCTOBER 28, 2010—DECIDED JANUARY 21, 2011

Before MANION, ROVNER, and SYKES, *Circuit Judges.*

MANION, *Circuit Judge.* Carlton McIntosh was convicted of escaping from federal custody, a violation of 18 U.S.C. § 751(a), and served a 41-month term of imprisonment followed by a period of supervised release. On two separate occasions, he violated the terms of his supervised release and was ordered to serve terms of reimprisonment. After being ordered to serve a second reimprisonment period, McIntosh filed a motion to reconsider the

judgment, arguing that it violated his constitutional rights, as articulated in *Apprendi v. New Jersey*, 530 U.S. 466 (2000). The district court denied the motion, and McIntosh now appeals. We affirm.

In September 2003, McIntosh escaped from a correctional community center where he was serving a sentence for money laundering. As a result, he was charged with escaping from federal custody. By statute, the maximum sentence for the offense is 60 months' imprisonment. 18 U.S.C. § 751(a). Following a bench trial, he was found guilty and sentenced to 41 months' imprisonment, followed by three years of supervised release.

In September 2006, McIntosh completed his term of imprisonment and began serving his first period of supervised release. During this time, however, McIntosh violated the terms of his release by committing a crime, failing to report to his probation officer, failing to obtain work, and leaving the judicial district without permission. Because of this conduct, in May 2007, the district court revoked McIntosh's supervised release and sentenced him to an additional 14 months' imprisonment and 22 months of supervised release.

In June 2008, McIntosh completed his second term of imprisonment and again went on supervised release. In August 2009, the government moved to revoke McIntosh's supervised release a second time. Over the course of a three-day hearing, the government presented evidence that had been recovered from McIntosh's house, including a driver's license with McIntosh's

picture and the name "Lamont Glass," and two debit cards with the names "Lamont Glass" and "Brent Spann." The government explained that "Lamont Glass" was the name of McIntosh's former cellmate. The government also presented evidence that McIntosh had used false identification to open two bank accounts in Glass's name; that he had obtained a tax refund in Glass's name without Glass's knowledge or permission; and that he had filed fraudulent federal income tax returns, in which he claimed tax refunds on behalf of several people whom he knew in prison and directed the refunds to himself instead of to the individuals listed on the tax return. In addition, the government presented evidence that McIntosh failed to report his arrest for criminal trespass to a motor vehicle involving the theft of a rental car, his contact with a convicted felon and federal inmate, his rental of two mailbox accounts, and his opening of multiple bank accounts. The government also demonstrated that McIntosh had failed to submit monthly supervision reports, make payments on his restitution, and sufficiently report information regarding his employment. Finally, the government presented bank records from accounts in McIntosh's name, showing gas station charges and other purchases made from locations outside the Northern District of Illinois even though McIntosh had not received permission to travel outside the district.

Following the hearing, the district court ruled that McIntosh had again violated the terms of his supervised release in multiple ways including using false identification to open bank accounts and to fraudulently obtain

money, failing to pay restitution, and failing to comply with the reporting requirements for his supervised release. Consequently, the district court revoked his supervised release and sentenced McIntosh to serve another 16 months of imprisonment, followed by 12 months of supervised release, which the district court later modified to six months of supervised release.

McIntosh objected to the sentence, arguing that the additional 16-month reimprisonment violated his rights under *Apprendi* and should be reduced to five months. The district court rejected McIntosh's argument, and he now appeals.

We review de novo challenges based on *Apprendi*. *United States v. Seymour*, 519 F.3d 700, 709 (7th Cir. 2008). *Apprendi* requires that "any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Apprendi*, 530 U.S. at 490. On appeal, McIntosh argues that because sanctions for violations of a supervised release are part of the penalty for the initial offense, *see Johnson v. United States*, 529 U.S. 694, 700 (2000), when his terms of reimprisonment are added to the original term of imprisonment and exceed the statutory maximum, *Apprendi* protections must apply. In McIntosh's case, adding his second reimprisonment (16 months) to his initial imprisonment (41 months) and the reimprisonment from the first violation of supervised release (14 months) gives a total of 71 months. This, of course, is greater than the 60-month statutory maximum authorized for his original offense.

McIntosh argues this is a violation of his constitutional rights under *Apprendi*.

*Apprendi* does not apply here. McIntosh's underlying offense, escaping from federal custody, has a 60-month maximum term of imprisonment and is classified as a Class D felony. *See* 18 U.S.C. § 751(a); 18 U.S.C. § 3559(a)(4). Under 18 U.S.C. § 3583, when imposing a sentence for a felony conviction, a district court "may include as part of the sentence a requirement that the defendant be placed on a term of supervised release after imprisonment." 18 U.S.C. § 3583(a). The statute also authorizes the district court to include provisions for violations of the supervised-release conditions, including revocation of the supervised release and reimprisonment. 18 U.S.C. § 3583(e)(3). When the underlying offense is a Class D felony, the maximum term of supervised release is three years and the maximum term of reimprisonment after the revocation of a supervised release is two years. 18 U.S.C. § 3583(b)(2), (e)(3).

McIntosh's argument fails because a district court's authority to sentence is not based solely on 18 U.S.C. § 751(a), but on 18 U.S.C. § 3583 as well. That is to say, by statute, a district court is not restricted to only imposing a sentence of up to 60 months; instead, by statute, a district court may impose a 60-month sentence *plus* a three-year term of supervised release, which may include an additional reimprisonment of up to two years should the defendant violate terms of the supervised release.

We previously rejected McIntosh's argument in *United States v. Colt*, 126 F.3d 981 (7th Cir. 1997). There, we

noted that the statutory interpretation suggested by McIntosh would result in the anomaly where, in the case of a criminal defendant sentenced at or near the maximum sentence for his offense, a district court could not impose the period of incarceration authorized by § 3583 if the defendant's supervised release was revoked. *Id.* at 983. We said that this "interpretation of § 3583 would therefore imply that Congress authorized a punishment that could never be imposed." *Id.*

Nevertheless, McIntosh contends that our decision in *Colt* is no longer controlling because it was decided before *Apprendi*'s release. But the rule in *Apprendi* does not apply to a sentence imposed under § 3583 following the revocation of a supervised release. A violation of supervised release is not a separate fact creating an additional penalty on top of a defendant's original sentence that may go beyond the statutory maximum, thereby requiring submission to a jury and proof beyond a reasonable doubt. Rather, supervised release, and the subsequent possibility of reimprisonment after a violation of that release, is a part of the original sentence imposed by the sentencing court following a defendant's conviction by a jury based on proof beyond a reasonable doubt. In other words, following his conviction, McIntosh was sentenced to a period of imprisonment and granted a period of "conditional liberty, the existence of which depends on [McIntosh's] observation of the limits of his supervised release." *United States v. Cunningham*, 607 F.3d 1264, 1268 (11th Cir. 2010). Accordingly, we have continued to rely on *Colt* after the *Apprendi* decision, albeit in unpublished orders. *See, e.g., United States v.*

*Santiago*, 250 Fed. App'x 736, 739 (7th Cir. 2007) (unpublished); *United States v. Kizeart*, 251 Fed. App'x 352, 354 (7th Cir. 2007) (unpublished); *United States v. Braziel*, 86 Fed. App'x 202, 204 (7th Cir. 2004) (unpublished). In addition, since the *Apprendi* decision, every circuit court to consider the supervised release revocation framework under 18 U.S.C. § 3583 has concluded that there is no constitutional violation. *See United States v. Work*, 409 F.3d 484, 489-92 (1st Cir. 2005); *United States v. Carlton*, 442 F.3d 802, 807-10 (2d Cir. 2006); *United States v. Dees*, 467 F.3d 847, 854-55 (3d Cir. 2006); *United States v. Johnson*, 356 Fed. App'x 785, 790-92 (6th Cir. 2009) (unpublished); *United States v. Huerta-Pimental*, 445 F.3d 1220, 1224-25 (9th Cir. 2006); *United States v. Cordova*, 461 F.3d 1184, 1186-88 (10th Cir. 2006); *Cunningham*, 607 F.3d at 1266-68 (11th Cir. 2010). McIntosh's constitutional rights were not violated by the second revocation of his supervised release and reimprisonment for an additional 16 months.

In his appeal, McIntosh also argues that there is insufficient evidence to support revoking his supervised release. "We review a district court's decision to revoke a term of supervised release for an abuse of discretion." *United States v. Young*, 41 F.3d 1184, 1186 (7th Cir. 1994). A district court may revoke a defendant's supervised release if it "finds by a preponderance of the evidence that the defendant violated a condition of supervised release." 18 U.S.C. § 3583(e)(3).

As described above, the government presented plenty of evidence that McIntosh used false identification to

open bank accounts and to fraudulently obtain money, failed to pay restitution, failed to comply with reporting requirements, and traveled outside the judicial district without permission. McIntosh attempts to rebut the evidence of false identification recovered from his house by speculating that someone else was using the identification to open bank accounts and obtain money, but there is no explanation for how the fake Illinois driver's license with the name "Lamont Glass" featured McIntosh's photograph. Also, during the hearing McIntosh conceded that he should have made restitution payments. Finally, McIntosh did not rebut the evidence of his failure to comply with the reporting requirements of his supervised release or the evidence of his travel outside the judicial district without permission. In sum, there is a preponderance of evidence to support the finding that McIntosh violated several conditions of his supervised release. Therefore, the district court did not abuse its discretion in revoking McIntosh's supervised release.

For these reasons, we AFFIRM the judgment of the district court.