**NONPRECEDENTIAL DISPOSITION**

To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted March 3, 2021[*]
Decided March 10, 2021

**Before**

DANIEL A. MANION, *Circuit Judge*

DIANE P. WOOD, *Circuit Judge*

AMY J. ST. EVE, *Circuit Judge*

No. 20-2518

| | |
|---|---|
| UNITED STATES OF AMERICA, | Appeal from the United States District |
| *Plaintiff-Appellee*, | Court for the Southern District of Illinois. |
| | |
| *v.* | No. 4:17-CR-40066-JPG-1 |
| | |
| ANGELA C. STAHL, | J. Phil Gilbert, |
| *Defendant-Appellant*. | *Judge*. |

**O R D E R**

Angela Stahl served a 14-month sentence on a conviction for fraud and identity theft, and then repeatedly violated the terms of her supervised release. Those violations led to three revocations and three more prison terms. Its patience at an end after the third revocation, the district court imposed a final sentence of 24 months in prison with

---

[*] The parties filed a joint motion to waive oral argument in this case. Because the briefs and record adequately present the facts and legal arguments, we granted that motion. FED. R. APP. P. 34(a)(2)(C).

no further supervision. The combined total of Stahl's initial and revocation prison terms was 61 months—greater than the high end (41 months) of her original, advisory guidelines range. Stahl argues that this combined sentence violates her right to a jury trial under *Apprendi v. New Jersey*, 530 U.S. 466 (2000). In her view, it exceeds the maximum sentence that would have been "legally permissible" in her original proceeding. Because *Apprendi* does not apply to this revocation proceeding and she is mistaken about the permissible cap, we affirm.

Stahl's prison terms came in four phases. The first term—14 months—occurred after she pleaded guilty in 2013 to conspiring to defraud the United States, 18 U.S.C. § 371, and using another's identity information unlawfully, 18 U.S.C. § 1028(a)(7). The probation officer calculated a guidelines range of 33 to 41 months in prison. (Stahl cites the Presentence Investigation Report to support this range; the report does not appear in the record, but the government agrees that this is correct.) The court imposed a below-guidelines sentence of 14 months' imprisonment on both counts, to run concurrently, followed by three years' supervised release. Stahl did not appeal, and she left prison in September 2014.

The second prison term came two years later, after Stahl violated her conditions of release by failing to report to her probation officer and take required drug tests. The district court accordingly revoked her supervised release and imposed a sentence of 12 months in prison, to be followed by another 18 months of supervised release.

Stahl received her third prison term about a year after she completed her second prison sentence in February 2017. In 2018, while on supervised release from the second prison term, the district court revoked her release because she failed a drug test. It sentenced her to 11 months in prison followed by another year of supervised release.

Even this did not work: Stahl failed successfully to complete her final year of supervised release. Shortly after she left prison in March 2019, she tested positive for illegal drugs and refused to reside in a residential reentry center. She also failed to check in with her probation officer. Back she went to court (after she reestablished contact with the probation office), where the district judge held a hearing on revoking her release in August 2020. At the hearing, Stahl's attorney argued that the maximum prison sentence that the district court could impose would be four months because, between Stahl's original and revocation prison terms, she had already received a combined prison sentence of 37 months. The lawyer reasoned that if her client received a sentence of more than four months, it would exceed the 41-month high end of the guidelines range from her original proceedings and would thus be presumptively unreasonable. The district

court rejected that legal argument and sentenced Stahl to 24 months in prison with no additional supervised release.

On appeal, Stahl argues that her 24-month prison sentence is unconstitutional because the combined total of her original and revocation sentences adds up to 61 months, which is 20 months greater than the high end of her original guidelines range. This combined sentence, she asserts, violates her constitutional rights under *Apprendi*, 530 U.S. at 466, because, in her view, it exceeds the "legally permissible sentence" from her original sentencing hearing and is based on facts about her supervised-release violations that were not proven to a jury beyond a reasonable doubt. We review challenges based on *Apprendi* de novo. *United States v. McIntosh*, 630 F.3d 699, 702 (7th Cir. 2011).

Stahl's big problem is *Apprendi* does not apply to sentences that are based on revocations under 18 U.S.C. § 3583(e)(3). In *Apprendi*, the Supreme Court held that "any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." 530 U.S. at 490. But, as we held in *McIntosh*, 630 F.3d at 703, this rule does not apply to sentences imposed under section 3583(e)(3) following a revocation of supervised release. In *McIntosh*, the defendant's crime of conviction carried a maximum sentence of 60 months' imprisonment, and the combined total of his initial and revocation sentences equaled 71 months. *Id*. at 702. We explained that the rule of *Apprendi* was not offended because the district court did not increase the punishment for the crime of conviction. Rather, based on McIntosh's violations of the terms of his conditional liberty, section 3583(e)(3) constitutionally permitted the district court to impose a prison term beyond the statutory maximum for the crime of conviction. *Id.* at 702–03. Under that reasoning, Stahl's sentence of 24 months' imprisonment after her third revocation of supervised release is constitutional.

Stahl acknowledges *McIntosh*, but she contends that its holding was undercut by the reasoning of a plurality of the Supreme Court in *United States v. Haymond*, 139 S. Ct. 2369 (2019). We do not read *Haymond* so broadly. In *Haymond*, the Court addressed a different provision of the statute governing supervised release, 18 U.S.C. § 3583(k). This provision required a district court to impose a minimum sentence of five years if it found by a preponderance of the evidence that a defendant on supervised release committed certain sex offenses. *Id*. at 2383. In the controlling opinion explaining that section 3583(k) violates the rule of *Apprendi*, Justice Breyer explained that section 3583(e) does not raise the same concerns. *Id.* at 2386 (Breyer, J., concurring). Section 3583(k), he wrote, unconstitutionally deprives district courts of discretion in two ways. First, upon finding

a violation, courts must reimprison, and upon reimprisoning, they must impose a five-year term. In contrast, when the district court revoked Stahl's supervised release under section 3583(e)(3), it had discretion to determine whether to apply a new prison term and, if it did, it did not need to abide by any mandatory minimum.

Quite apart from *McIntosh*, Stahl's sentence does not violate the rule of *Apprendi* because it is not "beyond the maximum of the statutory range" of the original crimes of conviction. *Apprendi*, 530 U.S. at 488. Stahl's conviction for conspiring to defraud the United States and commit identity theft carried five- and fifteen-year maximum sentences, respectively. See 18 U.S.C. §§ 371, 1028. So Stahl's total sentence of 61 months' (just slightly over five years) imprisonment for her original offense and revocations falls far below these combined maximums.

To avoid the fact that, even apart from *McIntosh*, her combined sentence is consistent with *Apprendi*, Stahl characterizes the top of her guidelines range as the greatest "legally permitted" sentence she can receive. That argument has been meritless since *United States v. Booker*, 543 U.S. 220, 231–32 (2005), which rendered the guidelines advisory. Stahl responds that above-guidelines sentences must be adequately justified, see *Gall v. United States*, 552 U.S. 38, 51 (2007), and her sentence was not so justified. She explains that she received a below-guidelines sentence at her original proceeding, but after judicial factfinding at her final revocation proceeding, her combined sentence was above the original guidelines range. That increase is not "legally permissible," she concludes, because the district court did not justify it at her original sentencing hearing. She relies on *Blakely v. Washington*, 542 U.S. 296 (2004), *Haymond*, and *Gall*.

Several fatal flaws undercut her reasoning. First, *Blakely* applies to judicial factfinding under a mandatory sentencing scheme, not the advisory one here. 542 U.S. at 299–300. Second, as already mentioned, the controlling opinion in *Haymond* explicitly limited its reach to the minimum sentence required under § 3583(k). 139 S. Ct. at 2386. Third, *Gall* requires that a district court justify its sentence for the crime of conviction, 552 U.S. at 49–50, and the sentencing court did so here. Then, based on Stahl's later violations, which the district court could not have known about at the original sentencing, it separately and adequately justified each revocation and reimprisonment. Finally, as the government points out, Stahl's position would lead to the absurd result that defendants originally sentenced to the high end of their guidelines range could never receive additional prison time if they violate the conditions of supervised release. No law requires that outcome.

AFFIRMED