**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 13a0486n.06

**Nos. 11-6148, 11-6422**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | **FILED** |
| | ) | *May 15, 2013* |
| Plaintiff-Appellee, | ) | DEBORAH S. HUNT, Clerk |
| | ) | |
| v. | ) | |
| | ) | ON APPEAL FROM THE |
| TERENCE CRAWLEY,     (11-6148) | ) | UNITED STATES DISTRICT |
| JONATHAN ALLEN,     (11-6422) | ) | COURT FOR THE EASTERN |
| | ) | DISTRICT OF TENNESSEE |
| Defendants-Appellants. | ) | |

BEFORE:  DAUGHTREY, ROGERS, and McKEAGUE, Circuit Judges.

ROGERS, Circuit Judge.  Defendants Jonathan Allen and Terence Crawley pled guilty to brandishing weapons and robbing a bank in Tennessee but reserved the right to appeal the denial of a motion to suppress evidence obtained from their car during a traffic stop in Virginia.  On appeal they note four possible Fourth Amendment violations by arguing: (1) that the Virginia state trooper who stopped them did not have probable cause to do so, (2) that the trooper allegedly extended the stop to an unreasonable length, (3) that the trooper unlawfully seized Crawley by asking to continue their conversation in the trooper's vehicle, and (4) that the trooper did not have probable cause to extend a consensual search of the car's cabin to its trunk.  The state trooper did not stop the defendants until he witnessed a traffic violation, extended the stop based on reasonable suspicion of criminal activity and to ensure his safety, and asked Crawley to sit in his vehicle to separate him

from Allen and for safety and comfort on a freezing day.  The officers had enough indicators of criminal activity to provide probable cause to extend the search of the car to the trunk.  The district court therefore properly denied the motion to suppress.

Crawley also challenges his within-guidelines 272-month sentence.  He argues that he should not have been designated a career offender because his two prior offenses occurred within hours of each other.  He also claims the district court erred in denying his motions for downward departures based on his criminal history and diminished mental capacity and that the court did not consider his diminished mental capacity under 18 U.S.C. § 3553(a).  However, he was properly designated a career offender under the sentencing guidelines, and the district court did take his mental capacity into account during sentencing.  Moreover, this court does not have jurisdiction to review the denials of the downward departures.

The district court credited the testimony of Virginia State Trooper Oris Lilly at the suppression hearing.  Lilly's testimony is mostly unchallenged and is as follows:

On the afternoon of January 4, 2010, Lilly was observing traffic traveling northbound on Interstate 81 near Wytheville.  He saw the defendants' car pass him with what appeared to him to be an expired Virginia inspection sticker and no front license plate.  Lilly followed the car and noticed that it was registered in Maryland, which he knew to require front license plates.  Soon after Lilly began following, the car took an exit, taking the last possible opportunity to merge into the exit lane.  The exit had no gas stations nearby and no northbound reentry onto the interstate.  The car hesitated at the bottom of the ramp, then headed north on U.S. 11 toward Wytheville with the trooper

following. Upon arriving in Wytheville, the defendants' car pulled into the parking lot of a pizza restaurant without signaling. At the time, the only car traveling behind the defendants was the trooper, who was in the left lane. One car was waiting further down the restaurant parking lot to turn onto the highway. The trooper pulled up behind the defendants' car, blocking its exit, and activated his lights.

When Allen, who had been driving the vehicle, opened the driver side door to talk to the trooper, Lilly noticed that the car's electronic gauges appeared not to be working and that there was a screwdriver on the floor. When he told the defendants that they were missing a front license plate, Crawley stated that it had been knocked off during a snowstorm. Lilly asked the defendants why they had exited the interstate and Allen responded that they needed gas. The trooper observed that both defendants appeared nervous and that Allen was significantly more nervous than the average person stopped by police tends to be.

Lilly returned to his vehicle to check the information the defendants gave him. He learned then that Crawley was wanted in Georgia on a non-extradition warrant for a weapons violation and had other previous arrests. Lilly also learned that Allen had previous drug arrests. In light of this information, Lilly requested backup. Trooper Russell Edwards arrived two to three minutes later. Once Edwards arrived, Lilly began asking the defendants questions about their travel. They stated that they had been on a fishing trip. Although there were fishing poles visible in the back of the car, Officer Lilly found this answer odd because it had been very cold and all of the lakes and most of the streams were frozen over. Moreover, neither defendant could produce a fishing license.

At that point, Lilly decided to question the defendants separately so he could tell Crawley about the warrant. Because it was fifteen degrees outside, Lilly asked Crawley to come back to the officer's car, and Crawley obliged. When Lilly questioned the defendants, they gave similar, but not entirely consistent stories. They both said that they had gone to North Carolina and spent a night with Allen's family. Crawley claimed that they had gone down New Year's Day but Allen stated it was New Year's Eve. Neither of them named a member of Allen's family nor did they name where they had stayed the next night. They both claimed to have partied with some women the third night but named two different motels where they had stayed.

After questioning Allen, Lilly returned to his patrol car, where Crawley remained, to write out summonses for failing to signal a turn and for driving with a defective tire. After finishing the summonses, Lilly told Crawley he was free to go but also asked for permission to search the car. Crawley told Lilly that he could search the inside of the car, which Lilly took to mean the car's cabin. Meanwhile, a local police officer had arrived and took a K-9 dog around the car. The dog did not alert. Lilly searched the car and found the vehicle's front license plate, which did not appear to him to have been through a snowstorm. He also noted at that time that at least one of the fishing poles appeared to be in its original packaging. Finally, he found what appeared to him to be a hidden compartment in the car, but he did not attempt to look inside the compartment.

Edwards testified that while he was helping Lilly conduct the search, he found a hand-rolled cigarette. He asked Crawley who owned the cigarette. Crawley responded that it was his father's and that his father had glaucoma. Edwards later stated that he was "100 percent positive" that the

cigarette contained marijuana. Lilly testified that he was not aware that marijuana had a salutary effect on the harmful aspects of glaucoma, but likewise stated that "[t]here is no doubt to me that it was marijuana." After finding the cigarette, the troopers searched the trunk of the car. In the trunk, they found approximately $70,000 in cash and several firearms.

While most of the troopers' testimony is unchallenged, Crawley's mother, who testified for the defense, made statements contradicting some of the troopers' testimony. She testified that she retrieved the car from the Virginia State Police. She testified that when she picked up the car, the electronic displays on the dashboard were functioning. She also testified that the fishing rods were not wrapped in their retail packaging. The defendants also challenged Lilly's story by introducing the summonses he issued. According to the time Lilly wrote on the summonses, they were issued at 4:50 in the afternoon, five minutes after Lilly stopped the defendants. This conflicts with Lilly's statements on direct examination that he did not issue the summonses until after he questioned Crawley in his car. On re-direct, Lilly clarified that the summonses were not issued until approximately thirty minutes after the stop.

The magistrate judge recommended denying the motion to suppress. The magistrate concluded that Lilly had probable cause to believe that the defendants violated Va. Code § 46.2-848—failing to signal. The magistrate further concluded that Lilly diligently pursued the purposes of the traffic stop and that all of his actions were supported by reasonable suspicion of criminal activity. Accordingly, the magistrate concluded that the officers did not unreasonably prolong the stop. Finally, the magistrate concluded that:

> the discovery of the marijuana cigarette, combined with Allen's hasty exit [off the interstate], [the d]efendants' criminal histories, the somewhat inconsistent stories, the evidence that Crawley may have lied about losing his front license plate, and Lilly's suspicions about a hidden compartment in the door, gave Lilly probable cause to believe the car might contain further evidence of criminal activity.

R.42, PageID #323. Thus, the magistrate determined that the search of the trunk was supported by probable cause. The district court accepted and adopted the magistrate's report and recommendations and denied the motions to suppress.

After their motions were denied, the defendants pled guilty. Allen raises no sentencing challenge here. Crawley objected to his designation as a career offender. The two predicate offenses for the designation were carjacking and first degree assault. The two events that led to those convictions happened within hours of each other. On the night of June 3, 2002, Crawley and a coconspirator had stolen a car in Montgomery County, Maryland. Several hours later, at about 2:00 a.m. the next morning, in neighboring Prince George's County, the coconspirators shot from the car at several victims. Crawley argued that the two incidents were part of a common scheme and that they would have been charged in the same indictment had they not occurred in separate counties. Crawley supported this theory by demonstrating that the sentences commenced on the same day and that the two judgments referred to each other. Crawley thus argued that the two sentences were in effect a single sentence and therefore that he should not be considered a career offender. Additionally, Crawley made two motions for a downward departure in his sentence due to diminished capacity and because he believed his criminal history category substantially over-represented the seriousness of his criminal history.

The district court rejected all of Crawley's arguments. On the career offender issue, the court noted that the sentences were not imposed on the same day and should therefore be counted separately under the sentencing guidelines. The court rejected the motion for a downward departure based on Crawley's criminal history because the court concluded that the carjacking and the assault were two separate violent crimes. The court rejected the diminished capacity departure motion based on the report of Crawley's expert and on letters that Crawley had written to the court. The court sentenced Crawley to 272 months of imprisonment, at the bottom of the effective guideline range.

The defendants now appeal, challenging the denial of their motions to suppress. They revive their arguments that Lilly did not have probable cause to stop their car and that the stop was unreasonably long. In addition, they argue that Lilly improperly seized Crawley by forcing him to enter the police cruiser, an argument they did not raise below. They also argue that the search of the trunk was not supported by probable cause. Finally, Crawley separately challenges his sentence. He argues that he should not be designated a career offender, that he is entitled to downward departures on the basis of his criminal history and diminished capacity, and that the district court committed procedural error by not taking his diminished capacity into account during sentencing.

The motion to suppress was properly denied. Lilly stopped the defendants' car only after he had probable cause to believe that they had committed a traffic violation. He completed the traffic stop in a reasonable time considering the circumstances and had reasonable suspicion to conduct further investigation. Viewing the evidence in the light most likely to support the district court's

decision, *see United States v. Cochrane*, 702 F.3d 334, 340 (6th Cir. 2012), we conclude that the troopers had probable cause to search the trunk of the car.

Lilly had probable cause to believe that the defendants committed a traffic violation when they failed to signal before turning into the parking lot. Lilly was following the defendants' car, driving approximately one to one-and-a-half car lengths behind it, when he witnessed the car turn into the parking lot without signaling. Allen, who was driving, admitted to Lilly that he did not signal. The officer also observed a car sitting in the parking lot just north of where Allen and Crawley turned, waiting to pull out onto the highway. Under Virginia law:

> Every driver who intends to back, stop, turn, or partly turn from a direct line shall first see that such movement can be made safely and, whenever the operation of any other vehicle may be affected by such movement, shall give the signals required in this article, plainly visible to the driver of such other vehicle, of his intention to make such movement.

Va. Code Ann. § 46.2-848. The defendants argue that the car in the parking lot could not have been affected by the failure to signal because the parking lot was large with many possible points of entry and egress and because the car would have had to wait for the defendants' car to pass or turn regardless. However, any car looking to pull onto a highway must monitor traffic on that highway. If the driver sees that the nearest approaching traffic is about to slow down and turn, it can prepare to pull out. There was a fair probability Allen's failure to signal could have affected the car preparing to enter the highway. That is all that the Virginia statute and the Fourth Amendment require to conduct a traffic stop. *See United States v. Harvey*, 269 F. App'x 329, 330 (4th Cir. 2008).

Lilly did not unreasonably extend the stop. He explained to the defendants why he had stopped them. He then collected their identifying information and ran it through the dispatcher. It is not inappropriate for an officer to check for valid identification and outstanding warrants while conducting a traffic stop. *See United States v. Smith*, 601 F.3d 530, 542 (6th Cir. 2010). After learning that the defendants had criminal backgrounds and even an active warrant, Lilly decided to wait to proceed until backup arrived. This was a short and reasonable delay to ensure the officer's safety. Lilly next questioned the defendants about their trip. Asking more questions than are necessary to issue a traffic citation is not necessarily unreasonable.

Finally, finding their story suspicious and wanting to tell Crawley about the warrant, Lilly separated Allen and Crawley. By this point, the defendants had told Lilly that they suddenly left the highway at an exit without reentry or any nearby gas stations so that they could get gas. They had also told him they had spent the past few days fishing, but could not name any body of water and did not have fishing licenses. Moreover, most lakes and streams were frozen over. Allen and Crawley were also acting unusually nervously. These facts gave the officer reasonable suspicion to separate the men to verify their story. *See Smith*, 601 F.3d at 542. After Lilly finished questioning Crawley, the trooper asked whether he could search the car, a reasonable request in light of his suspicions, and Crawley consented. It was at this point, thirty minutes into the stop, that Lilly finished the summons. Thirty minutes is significantly longer than a typical traffic stop should take. However, a thirty-minute traffic stop is reasonable in a situation where the officer has reasonable suspicion of further criminal activity and is taking steps to verify or resolve his suspicions. Thus, in *United States v.*

*Davis*, this court held that a thirty to forty-five minute detention while a drug dog was en route was appropriate because the police had reasonable suspicion that the defendant had narcotics. 430 F.3d 345, 354 (6th Cir. 2005). The delay here was likewise justified.

The defendants use the time written on the summons to argue that it was actually issued five minutes after the stop. They contend that this makes the next twenty-five minutes an unreasonable extension. This argument fails for two reasons. First, the district court found that Lilly "never abandoned the purpose of the traffic stop and was diligent in pursuing the purpose of the stop." R. 65, PageID #384. In light of Lilly's testimony that it took longer than five minutes to issue the summons, and the lack of any testimony suggesting otherwise, this determination is not clearly erroneous. Second, even had Lilly issued the summons within five minutes, reasonable suspicion of criminal activity beyond the traffic violation justified extending the stop.

The defendants also argue that Crawley was unlawfully seized when Lilly questioned him in the police car. However, they waived this argument by not raising it below. *See Hall v. Warden, Lebanon Corr. Inst.*, 662 F.3d 745, 754 (6th Cir. 2011). Furthermore, the argument would fail because Lilly's unchallenged testimony demonstrates that Crawley consented to being questioned in the cruiser.

The defendants next argue that the troopers did not have probable cause to extend their search to the trunk of the car. The strongest indicator that there was contraband in the trunk was the marijuana cigarette. The defendants deny that the cigarette contained marijuana but both troopers testified that they were certain that it did. There is nothing in the record that would cast doubt on

the troopers' testimony on this point or on their overall credibility. Although the cigarette alone does not create probable cause, this court has found that a marijuana cigarette when coupled with other evidence of drug activity provides probable cause. Thus, in *United States v. Crumb*, a marijuana cigarette in addition to the officer's smelling the odor of marijuana and the presence of a device used to load a revolver created probable cause to search a vehicle, even after the officers seized the cigarette itself. 287 F. App'x 511, 514–15 (6th Cir. 2008). Likewise, in *United States v. Mans*, the discovery of a marijuana cigarette in addition to a large amount of cash in the passenger compartment of a car provided officers with probable cause to search the car's trunk. 999 F.2nd 966, 969 (6th Cir. 1993). In this case, the troopers had the marijuana cigarette, a fishy story, an apparent attempt to evade police by leaving the interstate, and an apparent secret compartment. This was enough to create probable cause.

The district court also properly denied Crawley's sentencing contentions. Crawley argues that his previous sentences were "imposed on the same day" within the meaning of U.S. Sentencing Guidelines Manual § 4A1.2(a)(2) because they commenced on the same day and ran concurrently, and because the trial courts each referred to the other sentence in their judgments. Accordingly, he contends that he should not have been classified as a career offender. However, "[s]uch an approach would ignore the clear instruction from section 4A1.2(a)(2)." *United States v. Jones*, 698 F.3d 1048, 1051 (8th Cir. 2012). Section 4A1.2(a)(2) states that the sentences can only be counted as one if "(A) the sentences resulted from offenses contained in the same charging instrument; or (B) the sentences were imposed on the same day." In this case, the two offenses were charged separately

and the sentences were imposed on separate days—January 7th, 2003 and January 17th, 2003. PSR at 9–10. Therefore, they must be counted separately.

Crawley argues that had he not crossed a county border between committing the first and second crimes, he would not have been charged separately and the sentences would almost certainly have been imposed on the same day. The Eighth Circuit has rejected a similar argument, *Jones*, 698 F.3d at 1050–51 (crossing Missouri-Kansas line). Invisible lines and jurisdictional issues matter, and the guidelines are clear and list no exceptions.

In the alternative, Crawley argues that his prior offenses were functionally consolidated because they were entered pursuant to a universal plea agreement and are factually related. Under the old sentencing guidelines, this argument had a chance of success. Under the current ones, it does not. The 2007 amendments to the sentencing guidelines "eliminate[d] altogether the 'relatedness' inquiry from the determination of whether to count prior sentences separately." *United States v. Atkinson*, 354 F. App'x 250, 253 (6th Cir. 2009). Crawley challenges a sentence imposed under the current version of the guidelines. The current guidelines require the court to count the offenses as one only if they were charged in the same instrument or the sentences for them were imposed on the same day. U.S. Sentencing Guidelines Manual §4A1.2(a)(2) (2010). In this case, neither happened. Therefore, the offenses are counted separately and the district court properly classified Crawley as a career offender.

Crawley next argues that the district court should have granted a downward departure from the guidelines range because the jurisdictional issue caused his criminal history score to overstate

his actual criminal history and because he suffered from diminished mental capacity. "The law in this circuit is clear that we have no jurisdiction to review a decision of a district court 'not to depart downward unless the record shows that the district court was unaware of, or did not understand, its discretion to make such a departure.'" *United States v. Bazazpour*, 690 F.3d 796, 804 (6th Cir. 2012) (quoting *United States v. Santillana*, 540 F.3d 428, 431 (6th Cir. 2008)). The record shows that the district court knew and understood that it had discretion to make a departure based on criminal history and decided not to because it "d[id] not find that Mr. Crawley's criminal history is overstated." R. 134, PageID #752. Likewise, the court did not depart based on diminished mental capacity because "Mr. Crawley did have an understanding of the actions that he was engaged in, and . . . he understands that they were wrong as well." *Id.* at PageID #757. Therefore, this court does not have jurisdiction to review these decisions.

Finally, Crawley argues that the district court's sentence is procedurally unreasonable because the court did not consider the diminished capacity evidence under the factors listed in 18 U.S.C. § 3553(a). However, the district court explicitly noted that it:

> will certainly take all of those factors into consideration in imposing [a] final sentence in this matter. After all, Title 18, United States Code, Section 3553(a)(1) requires [the court] to take into consideration the nature and circumstances of the offense and the history and characteristics of the defendant, and all of the factors that [the defense] just mentioned . . . do fall within the category of Mr. Crawley's history and characteristics.

R. 134, PageID #759–60. Accordingly, the district court did not commit procedural error in sentencing.

The judgments of the district court are affirmed.